IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 434-907-5479 IN THE CUSTODY OR CONTROL OF VERIZON WIRELESS. | ) ) ) ) ) ) ) ) **FILED UNDER SEAL**<br><br>Case No. 6:20mj32 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Daniel Bailey, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **434-907-5479** (the "**Target Cell Phone**"), with no listed subscriber, whose service provider is Verizon Wireless ("Verizon"), a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3. I am a Task Force Officer with the Drug Enforcement Administration (DEA) and have been since 2017. I am also a Detective with the Lynchburg Police Department (Virginia) and be been so employed since 2002. I am currently assigned to investigate drug trafficking organizations as a member of the DEA, Washington Field Division/Roanoke Resident Office. My duties as a Task Force Officer involve the investigation of various criminal activities of narcotics traffickers and their associates. In investigating these matters, I have acted as a case agent, an undercover agent, and a contact agent for confidential sources. These investigations have resulted in the issuance of federal search warrants, seizure warrants, indictments, and convictions of persons for federal narcotics violations. During my employment as a law enforcement officer, I have received multiple hours of training in narcotics enforcement and investigative techniques, and I have personally participated in numerous investigations. I have also spoken on numerous occasions with informants, suspects, and other experienced narcotics traffickers concerning the methods and practices of drug traffickers, including the methods and practices used by traffickers of methamphetamine, heroin, and cocaine. I have been involved in the execution of numerous search warrants on electronic devices, including cellphones, and in obtaining location information for those devices.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Donnell MILLER ("MILLER"), and others, are engaged in a conspiracy to violate federal drug laws, specifically: narcotics trafficking, in violation of 21 U.S.C. § 841(a); and offenses

2

involving the use of communications facilities in commission of narcotic offenses, in violation of 21 U.S.C. § 843(b). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6.  The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## STATEMENT OF PROBABLE CAUSE

7.  The United States, including Drug Enforcement Administration ("DEA") and the Lynchburg Police Department ("LPD"), is conducting a criminal investigation of Co-Conspirator #1 ("CC-1"), Donnell Miller ("MILLER"), and others regarding violations of distribution and possession with intent to distribute cocaine and other controlled substances, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute cocaine and other controlled substances, in violation of 21 U.S.C. § 846.

8.  CC-1 has been identified as the leader of a Drug Trafficking Organization. Based on this investigation, CC-1 is reported to supply multiple co-conspirators, in addition to others in the Lynchburg area, with distributable amounts of cocaine HCL and marijuana.

9.  MILLER has been identified as being supplied with cocaine HCL by CC-1 and then re-distributing that cocaine HCL in the Western District of Virginia.

10. MILLER is currently wanted by the Lynchburg Police Department (Lynchburg, Virginia), which is located in the Western District of Virginia, for two counts of Possession with the Intent to Distribute a Controlled I/II Substance.

## MILLER's Use of Cell Phones to Facilitate Drug Transactions

11.    In November of 2019, the Lynchburg Police Department used a paid Confidential Source ("CS-1") to conduct two separate purchases of cocaine HCL from MILLER. During each of those controlled purchases, CS-1 contacted MILLER on a cellular phone to facilitate the transactions.

12.    In December 2019, the LPD executed a Virginia-issued search warrant on Verizon Wireless for the stored communication content for a cellular phone number previously identified as being used by MILLER. Analysis of the data received from Verizon Wireless determined that MILLER was in contact with a cellular phone number previously identified as being used by CC-1. The contact between those two numbers included text message exchanges. Those text messages detailed a scheduled meeting between MILLER and CC-1 in Charlotte, North Carolina for the purpose of MILLER acquiring "1 –and a 1/2" from CC-1. CC-1 instructed MILLER to meet at the Country Inn and Suites (Charlotte, NC). MILLER provided CC-1 the room number that MILLER was in.

13.    Law enforcement later served an Administrative Subpoena on that establishment and determined that Co-Conspirator 2 ("CC-2") had rented that room, described my MILLER, on the same night of the day the proposed meeting date.

14.    On February 14, 2020, CC-2 was arrested by the Lynchburg Police for narcotic violations. CC-2 provided law enforcement a post-*Miranda* statement regarding their criminal activity. CC-2 advised that they were close acquaintances of MILLER. CC-2 advised that they had personally driven MILLER to Charlotte, NC, on multiple occasions, to purchase "bricks" of cocaine HCL from CC-1. CC-2 specifically mentioned driving MILLER to the Country Inn and

Suites, previously described in this affidavit, to meet with CC-1. CC-2 advised that MILLER obtained quantity of cocaine HCL from CC-1 that appeared to be just short of a kilogram.

### Identification of the Target Cell Phone

15. In November of 2020, law enforcement received information from a Confidential Source ("CS-2") that MILLER was using the **Target Cell Phone** to coordinate drug sales. CS-2 is working for consideration on a pending narcotic distribution offenses.

16. CS-2 had previously conducted telephones calls to CC-1 in the presence of law enforcement. During those calls, CC-1 used "CC-1's Telephone Number."

17. On November 18, 2020, CS-2 advised that CS-2 spoke with CC-1 regarding the availability of cocaine HCL to purchase from CC-1. During that conversation, CC-1 advised CS-2 that CC-1 had just spoken with MILLER regarding the coordination of purchasing 500 grams of cocaine HCL from CC-1.

18. On November 18, 2020, law enforcement received toll data records for CC-1's Telephone Number from AT&T. Based on that data, law enforcement determined that the **Target Cell Phone** was in contact with CC-1, to include the exchange of text messages.

19. In November of 2020, the DEA issued an Administrative Subpoena on Verizon Wireless for subscriber and toll record history for the **Target Cell Phone**. The subpoena results have shown that there was no subscriber for the **Target Cell Phone.** The subscriber information showed that the **Target Cell Phone** became active on November 12, 2020.

20. Based on the totality of the investigation there is probable cause to believe MILLER is involved in the distribution of narcotics and uses the **Target Cell Phone** to conduct this activity. Further, although the **Target Cell Phone** has no subscriber name there is probable cause that it is in fact used by MILLER. In my training and experience, individuals engaged in

drug trafficking use cellular phones to communicate, via text messaging, to conduct this activity. Therefore, the **Target Cell Phone** will likely reveal important electronic communications between MILLER and co-conspirators, both I identified and unidentified.

21. In my training and experience, I have learned that VERIZON WIRELESS is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training and experience, I know that VERIZON WIRELESS can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the **Target Cell Phone** on VERIZON WIRELESS 's network or with such other reference points as may be reasonably available.

23.     Based on my training and experience, I know that VERIZON WIRELESS can collect cell-site data about the **Target Cell Phone**.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as VERIZON WIRELESS typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

24.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the

extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct VERIZON WIRELESS to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VERIZON WIRELESS. I also request that the Court direct VERIZON WIRELESS to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VERIZON WIRELESS 's services, including by initiating a signal to determine the location of the Target Cell Phone on VERIZON WIRELESS 's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate VERIZON WIRELESS for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*s/Daniel Bailey*
Daniel Bailey, Task Force Officer
Drug Enforcement Administration

Received by reliable electronic means and sworn and attested to by telephone on this 20th day of November 2020.

*Robert S. Ballou*
ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE